# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 23-CR-369 (JMC) |
| v. | [18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds)] |
| WILLIAM F. BEALS, II, | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, William F. Beals, II, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code,

Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. This joint session of Congress was an official proceeding as that term is used in Title 18, United States Code, Section 1512. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.      The defendant traveled from Tennessee to the Washington, D.C. area on or about January 5, 2021. The next day, surveillance video captured the defendant as he walked down Pennsylvania Walkway towards the restricted grounds. Shortly after 1:00 pm, the crowd began to overwhelm police officers at the Capitol, pushing aside temporary fencing and barricades. As the

defendant walked toward the Capitol, the bike rack barricades were being taken apart in front of him by members of the mob. He then stood near a portion of the barricades that had been cast aside by the mob.

9. Moments later, the defendant reached the Lower West Plaza area, where police had formed a human barricade to counteract the crowd's advancement. The defendant traveled to the Lower West Terrace or the West Plaza Barricade area where he confronted members of law enforcement including members of the United States Capitol Police (USCP). He pushed against and resisted enforcement of a barricade, which USCP used in an effort to hold back the crowd. The defendant yelled at police officers saying, "Fuck you! I'll bet your mama's proud of your bitchass!" *See* figure below.



*Beals in yellow circle Lower Plaza of the U.S. Capitol*

Page **4** of **8**

10. At approximately 1:30 pm, the crowd began to physically overtake the police line positioned outside the scaffolding and on the Northwest Steps, giving the rioters access to the U.S. Capitol Building's Upper West Terrace. The defendant climbed the scaffolding to make his way closer to the entrance. The defendant made his way through this region of the restricted area towards the front of the crowd by climbing up the scaffolding, where police were working to thwart the rioters' forward progress.

11. The defendant subsequently made his way to the Northwest Courtyard near the Senate Wing Door. At approximately 2:13 pm, the first rioters entered the U.S. Capitol Building. Minutes later, the defendant is seen on CCTV first making entry via the NW Side Door. He remained inside the Capitol Building for approximately eight minutes posing for pictures, holding up signs, and speaking with other rioters. According to CCTV footage, Beals left the Capitol building at approximately 2:20pm.

12. By approximately 2:40 p.m., law enforcement secured the Senate Wing Door, the first area of the Capitol Building that had been breached. However, at approximately 2:45 pm a second rush of rioters breached the Capitol in the same area. At approximately 2:48 pm, the defendant donned a gas mask and re-entered the Capitol via the Senate Wing Door. The defendant was part of a group of rioters who physically overpowered members of USCP who were working a second breach of the Senate Wing Door. During his second entry into the Capitol Building, the defendant remained inside the building for approximately five minutes before exiting again.

13. The defendant took at least one cellphone video after exiting the Capitol Building but while still in the restricted area. After exiting the Capitol, the defendant recorded himself announcing on TikTok, "so we officially took the White House". *See* figure below.



*Elements of the Offense*

14. The parties agree that Entering or Remaining In A Restricted Building Or Grounds, in violation of 18 U.S.C. § 1752(a)(1), requires the following elements:

   a. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

   b. Second, the defendant did so knowingly.

15. The parties agree that Disorderly or Disruptive Conduct In A Restricted Building, in violation of 18 U.S.C. § 1752(a)(2), requires the following elements:

   a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and

c. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*Defendant's Acknowledgments*

16. The defendant knowingly and voluntarily admits to all the elements as set forth above. The defendant further admits that he knew that the Vice President was or would be visiting the U.S. Capitol on that day.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *s/ Cytheria D. Jernigan*
CYTHERIA D. JERNIGAN
Assistant United States Attorney
D.C. Bar No. 494742
Capitol Siege Section
Detailed to the U.S. Attorney's Office
District of Columbia
601 D Street, NW
Washington, DC 20530
(318) 676-3611
cytheria.jernigan@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, William F. Beals, II, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4/23/24

William F. Beals, II
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/23/24

Rebecca Shepard
Attorney for Defendant